(Slip Opinion)  OCTOBER TERM, 2007  1

NOTE: Where it is feasible, a syllabus (headnote) will be released, as is being done in connection with this case, at the time the opinion is issued. The syllabus constitutes no part of the opinion of the Court but has been prepared by the Reporter of Decisions for the convenience of the reader. See *United States* v. *Detroit Timber & Lumber Co.,* 200 U. S. 321, 337.

# SUPREME COURT OF THE UNITED STATES

Syllabus

## ALI *v.* FEDERAL BUREAU OF PRISONS ET AL.

### CERTIORARI TO THE UNITED STATES COURT OF APPEALS FOR THE ELEVENTH CIRCUIT

No. 06–9130.   Argued October 29, 2007—Decided January 22, 2008

The Federal Tort Claims Act (FTCA) waives the United States' sovereign immunity for claims arising out of torts committed by federal employees, see 28 U. S. C. §1346(b)(1), but, as relevant here, exempts from that waiver "[a]ny claim arising in respect of the assessment or collection of any tax or customs duty, or the detention of any . . . property by any officer of customs or excise or any other law enforcement officer," §2680(c). Upon his transfer from an Atlanta federal prison to one in Kentucky, petitioner noticed that several items were missing from his personal property, which had been shipped to the new facility by the Federal Bureau of Prisons (BOP). Alleging that BOP officers had lost his property, petitioner filed this suit under, *inter alia*, the FTCA, but the District Court dismissed that claim as barred by §2680(c). Affirming, the Eleventh Circuit rejected petitioner's argument that the statutory phrase "any officer of customs or excise or any other law enforcement officer" applies only to officers enforcing customs or excise laws.

*Held:* Section 2680(c)'s text and structure demonstrate that the broad phrase "any other law enforcement officer" covers all law enforcement officers. Petitioner's argument that §2680(c) is focused on preserving sovereign immunity only for officers enforcing customs and excise laws is inconsistent with the statute's language. "Read naturally, the word 'any' has an expansive meaning, that is, 'one or some indiscriminately of whatever kind.' " *United States* v. *Gonzales*, 520 U. S. 1, 5. For example, in considering a provision imposing an additional sentence that was not to run concurrently with "any other term of imprisonment," 18 U. S. C. §924(c)(1), the *Gonzales* Court held that, notwithstanding the subsection's initial reference to federal drug trafficking crimes, the expansive word "any" and the absence of re-

Syllabus

strictive language left "no basis in the text for limiting" the phrase "any other term of imprisonment" to federal sentences. 520 U. S*.,* at 5. To similar effect, see *Harrison* v. *PPG Industries, Inc.*, 446 U. S. 578, 588–589, in which the Court held that there was "no indication whatever that Congress intended" to limit the "expansive language" "'any other final action'" to particular kinds of agency action. The reasoning of *Gonzales* and *Harrison* applies equally to 28 U. S. C. §2680(c): Congress' use of "any" to modify "other law enforcement officer" is most naturally read to mean law enforcement officers of whatever kind. To be sure, the text's references to "tax or customs duty" and "officer[s] of customs or excise" indicate an intent to preserve immunity for claims arising from an officer's enforcement of tax and customs laws. The text also indicates, however, that Congress intended to preserve immunity for claims arising from the detention of property, and there is no indication of any intent that immunity for those claims turns on the type of law being enforced. Recent amendments to §2680(c) restoring the sovereign immunity waiver for officers enforcing *any* federal forfeiture law, see §2680(c)(1), support the Court's conclusion by demonstrating Congress' view that, prior to the amendments, §2680(c) covered *all* law enforcement officers. Against this textual and structural evidence, petitioner's reliance on the canons of statutory construction *ejusdem generis* and *noscitur a sociis* and on the rule against superfluities is unconvincing. The Court is unpersuaded by petitioner's attempt to create ambiguity where the statute's structure and text suggest none. Had Congress intended to limit §2680(c)'s reach as petitioner contends, it easily could have written "any other law enforcement officer *acting in a customs or excise capacity*." Instead, it used the unmodified, all-encompassing phrase "any other law enforcement officer." This Court must give effect to the text Congress enacted. Pp. 3–13.

204 Fed. Appx. 778, affirmed.

THOMAS, J., delivered the opinion of the Court, in which ROBERTS, C. J., and SCALIA, GINSBURG, and ALITO, JJ., joined. KENNEDY, J., filed a dissenting opinion, in which STEVENS, SOUTER, and BREYER, JJ., joined. BREYER, J., filed a dissenting opinion, in which STEVENS, J., joined.

NOTICE: This opinion is subject to formal revision before publication in the preliminary print of the United States Reports. Readers are requested to notify the Reporter of Decisions, Supreme Court of the United States, Washington, D. C. 20543, of any typographical or other formal errors, in order that corrections may be made before the preliminary print goes to press.

# SUPREME COURT OF THE UNITED STATES

No. 06–9130

ABDUS-SHAHID M. S. ALI, PETITIONER *v.* FEDERAL BUREAU OF PRISONS ET AL.

ON WRIT OF CERTIORARI TO THE UNITED STATES COURT OF APPEALS FOR THE ELEVENTH CIRCUIT

[January 22, 2008]

JUSTICE THOMAS delivered the opinion of the Court.

This case concerns the scope of 28 U. S. C. §2680, which carves out certain exceptions to the United States' waiver of sovereign immunity for torts committed by federal employees. Section 2680(c) provides that the waiver of sovereign immunity does not apply to claims arising from the detention of property by "any officer of customs or excise or any other law enforcement officer." Petitioner contends that this clause applies only to law enforcement officers enforcing customs or excise laws, and thus does not affect the waiver of sovereign immunity for his property claim against officers of the Federal Bureau of Prisons (BOP). We conclude that the broad phrase "any other law enforcement officer" covers all law enforcement officers. Accordingly, we affirm the judgment of the Court of Appeals upholding the dismissal of petitioner's claim.

I

Petitioner Abdus-Shahid M. S. Ali was a federal prisoner at the United States Penitentiary in Atlanta, Georgia, from 2001 to 2003. In December 2003, petitioner was scheduled to be transferred to the United States Peniten-

tiary Big Sandy (USP Big Sandy) in Inez, Kentucky. Before being transferred, he left two duffle bags containing his personal property in the Atlanta prison's Receiving and Discharge Unit to be inventoried, packaged, and shipped to USP Big Sandy. Petitioner was transferred, and his bags arrived some days later. Upon inspecting his property, he noticed that several items were missing. The staff at USP Big Sandy's Receiving and Discharge Unit told him that he had been given everything that was sent, and that if things were missing he could file a claim. Many of the purportedly missing items were of religious and nostalgic significance, including two copies of the Qur'an, a prayer rug, and religious magazines. Petitioner estimated that the items were worth $177.

Petitioner filed an administrative tort claim. In denying relief, the agency noted that, by his signature on the receipt form, petitioner had certified the accuracy of the inventory listed thereon and had thereby relinquished any future claims relating to missing or damaged property. Petitioner then filed a complaint alleging, *inter alia*, violations of the Federal Tort Claims Act (FTCA), 28 U. S. C. §§1346, 2671 *et seq.* The BOP maintained that petitioner's claim was barred by the exception in §2680(c) for property claims against law enforcement officers. The District Court agreed and dismissed petitioner's FTCA claim for lack of subject-matter jurisdiction. Petitioner appealed.

The Eleventh Circuit affirmed, agreeing with the District Court's interpretation of §2680(c). 204 Fed. Appx. 778, 779–780 (2006) *(per curiam).* In rejecting petitioner's arguments, the Court of Appeals relied on this Court's broad interpretation of §2680(c)'s "detention" clause in *Kosak* v. *United States*, 465 U. S. 848, 854–859 (1984), on decisions by other Courts of Appeals, and on its own decision in *Schlaebitz* v. *United States Dept. of Justice*, 924 F. 2d 193, 195 (1991) *(per curiam)* (holding that United States Marshals, who were allegedly negligent in releas-

ing a parolee's luggage to a third party, were "law enforcement officers" under §2680(c)). See 204 Fed. Appx., at 779–780.

We granted certiorari, 550 U. S. \_\_\_ (2007), to resolve the disagreement among the Courts of Appeals as to the scope of §2680(c).[1]

## II

In the FTCA, Congress waived the United States' sovereign immunity for claims arising out of torts committed by federal employees. See 28 U. S. C. §1346(b)(1). As relevant here, the FTCA authorizes "claims against the United States, for money damages . . . for injury or loss of property . . . caused by the negligent or wrongful act or omission of any employee of the Government while acting within the scope of his office or employment." *Ibid.* The FTCA exempts from this waiver certain categories of claims. See §§2680(a)–(n). Relevant here is the exception in subsection (c), which provides that §1346(b) shall not apply to "[a]ny claim arising in respect of the assessment or collection of any tax or customs duty, or the detention of any goods, merchandise, or other property by any officer of customs or excise or any other law enforcement officer." §2680(c).

--------

[1] The Eleventh Circuit joined five other Courts of Appeals in construing §2680(c) to encompass all law enforcement officers. See *Bramwell* v. *Bureau of Prisons*, 348 F. 3d 804, 806–807 (CA9 2003); *Chapa* v. *Dept. of Justice*, 339 F. 3d 388, 390 (CA5 2003) *(per curiam); Hatten* v. *White*, 275 F. 3d 1208, 1210 (CA10 2002); *Cheney* v. *United States*, 972 F. 2d 247, 248 (CA8 1992) *(per curiam); Ysasi* v. *Rivkind*, 856 F. 2d 1520, 1525 (CA Fed. 1988). Five other Courts of Appeals reached the contrary conclusion, interpreting the clause as limited to officers performing customs or excise functions. See *ABC* v. *DEF*, 500 F. 3d 103, 107 (CA2 2007); *Dahler* v. *United States*, 473 F. 3d 769, 771–772 (CA7 2007) *(per curiam); Andrews* v. *United States*, 441 F. 3d 220, 227 (CA4 2006); *Bazuaye* v. *United States*, 83 F. 3d 482, 486 (CADC 1996); *Kurinsky* v. *United States*, 33 F. 3d 594, 598 (CA6 1994).

This case turns on whether the BOP officers who allegedly lost petitioner's property qualify as "other law enforcement officer[s]" within the meaning of §2680(c).[2] Petitioner argues that they do not because "any other law enforcement officer" includes only law enforcement officers acting in a customs or excise capacity. Noting that Congress referenced customs and excise activities in both the language at issue and the preceding clause in §2680(c), petitioner argues that the entire subsection is focused on preserving the United States' sovereign immunity only as to officers enforcing those laws.

Petitioner's argument is inconsistent with the statute's language.[3] The phrase "*any* other law enforcement officer" suggests a broad meaning. *Ibid.* (emphasis added). We have previously noted that "[r]ead naturally, the word 'any' has an expansive meaning, that is, 'one or some indiscriminately of whatever kind.'" *United States* v. *Gonzales*, 520 U. S. 1, 5 (1997) (quoting Webster's Third

---

[2] We assume, without deciding, that the BOP officers "detained" Ali's property and thus satisfy §2680(c)'s "arising in respect of . . . detention" requirement. The Court of Appeals held that the "detention" clause was satisfied, and petitioner expressly declined to raise the issue on certiorari. See 204 Fed. Appx. 778, 779–780 (CA11 2006) *(per curiam);* Brief for Petitioner 10–11, n. 9.

[3] We consider this question for the first time in this case. Petitioner argues that this Court concluded in *Kosak* v. *United States*, 465 U. S. 848 (1984), that the phrase "any other law enforcement officer" is ambiguous. Reply Brief for Petitioner 4. In that case, the Court construed a portion of the same clause at issue here, but the decision had no bearing on the meaning of "any other law enforcement officer." 465 U. S., at 853–862 (holding that "detention" encompasses claims resulting from negligent handling or storage). Indeed, the Court expressly declined to reach the issue. *Id.*, at 852, n. 6 ("We have no occasion in this case to decide what kinds of 'law-enforcement officer[s],' other than customs officials, are covered by the exception." (alteration in original)). Petitioner's reliance on the footnote as concluding that the phrase is ambiguous reads too much into the Court's reservation of a question that was not then before it.

New International Dictionary 97 (1976)).  In *Gonzales*, we considered a provision that imposed an additional sentence for firearms used in federal drug trafficking crimes and provided that such additional sentence shall not be concurrent with "any other term of imprisonment."  520 U. S., at 4 (quoting 18 U. S. C. §924(c)(1) (1994 ed.) (emphasis deleted)).  Notwithstanding the subsection's initial reference to federal drug trafficking crimes, we held that the expansive word "any" and the absence of restrictive language left "no basis in the text for limiting" the phrase "any other term of imprisonment" to federal sentences.  520 U. S., at 5.  Similarly, in *Harrison* v. *PPG Industries, Inc.*, 446 U. S. 578 (1980), the Court considered the phrase "any other final action" in amendments to the Clean Air Act.  The Court explained that the amendments expanded a list of Environmental Protection Agency Administrator actions by adding two categories of actions: actions under a specifically enumerated statutory provision, and "any other final action" under the Clean Air Act.  *Id.,* at 584 (emphasis deleted).  Focusing on Congress' choice of the word "any," the Court "discern[ed] no uncertainty in the meaning of the phrase, 'any other final action,'" and emphasized that the statute's "expansive language offer[ed] no indication whatever that Congress intended" to limit the phrase to final actions similar to those in the specifically enumerated sections.  *Id.,* at 588–589.

We think the reasoning of *Gonzales* and *Harrison* applies equally to the expansive language Congress employed in 28 U. S. C. §2680(c).  Congress' use of "any" to modify "other law enforcement officer" is most naturally read to mean law enforcement officers of whatever kind.[4]

_____

[4] Of course, other circumstances may counteract the effect of expansive modifiers.  For example, we have construed an "any" phrase narrowly when it included a term of art that compelled that result.  See *Circuit City Stores, Inc.* v. *Adams*, 532 U. S. 105, 115–116 (2001) (construing "any other class of workers engaged in . . . commerce," 9

The word "any" is repeated four times in the relevant portion of §2680(c), and two of those instances appear in the particular phrase at issue: "*any* officer of customs or excise or *any* other law enforcement officer." (Emphasis added.) Congress inserted the word "any" immediately before "other law enforcement officer," leaving no doubt that it modifies that phrase. To be sure, the text's references to "tax or customs duty" and "officer[s] of customs or excise" indicate that Congress intended to preserve immunity for claims arising from an officer's enforcement of tax and customs laws. The text also indicates, however, that Congress intended to preserve immunity for claims arising from the detention of property, and there is no indication that Congress intended immunity for those claims to turn on the type of law being enforced.

Petitioner would require Congress to clarify its intent to cover all law enforcement officers by adding phrases such as "performing any official law enforcement function," or "without limitation." But Congress could not have chosen a more all-encompassing phrase than "any other law enforcement officer" to express that intent. We have no reason to demand that Congress write less economically and more repetitiously.

──────────

U. S. C. §1, narrowly based on the Court's previous interpretation of "in commerce" as a term of art with a narrower meaning). We also have construed such phrases narrowly when another term in the provision made sense only under a narrow reading, see *United States* v. *Alvarez-Sanchez*, 511 U. S. 350, 357–358 (1994) (limiting "any law-enforcement officer" to federal officers because the statute's reference to "delay" made sense only with respect to federal officers), and when a broad reading would have implicated sovereignty concerns, see *Raygor* v. *Regents of Univ. of Minn.*, 534 U. S. 533, 541–542 (2002) (applying the "clear statement rule" applicable to waivers of sovereign immunity to construe the phrase "all civil actions" to exclude a category of claims, "even though nothing in the statute expressly exclude[d]" them). None of the circumstances that motivated our decisions in these cases is present here.

Recent amendments to §2680(c) support the conclusion that "any other law enforcement officer" is not limited to officers acting in a customs or excise capacity. In the Civil Asset Forfeiture Reform Act of 2000, Congress added subsections (c)(1)–(c)(4) to 28 U. S. C. §2680. §3(a), 114 Stat. 211. As amended, §2680(c) provides that the §1346(b) waiver of sovereign immunity, notwithstanding the exception at issue in this case, applies to:

> "[A]ny claim based on injury or loss of goods, merchandise, or other property, while in the possession of any officer of customs or excise or any other law enforcement officer, if—
>
>   "(1) the property was seized for the purpose of forfeiture under any provision of Federal law providing for the forfeiture of property other than as a sentence imposed upon conviction of a criminal offense;
>
>   "(2) the interest of the claimant was not forfeited;
>
>   "(3) the interest of the claimant was not remitted or mitigated (if the property was subject to forfeiture); and
>
>   "(4) the claimant was not convicted of a crime for which the interest of the claimant in the property was subject to forfeiture under a Federal criminal forfeiture law."

The amendment does not govern petitioner's claim because his property was not "seized for the purpose of forfeiture," as required by paragraph (1). Nonetheless, the amendment is relevant because our construction of "any other law enforcement officer" must, to the extent possible, ensure that the statutory scheme is coherent and consistent. See *Robinson* v. *Shell Oil Co.*, 519 U. S. 337, 340 (1997) (citing *United States* v. *Ron Pair Enterprises*, 489 U. S. 235, 240 (1989)). The amendment canceled the exception—and thus restored the waiver of sovereign immunity—for certain seizures of property based on *any*

federal forfeiture law.  See 28 U. S. C. §2680(c)(1) (excepting property claims if "the property was seized for the purpose of forfeiture under *any provision of Federal law* providing for the forfeiture of property" (emphasis added)).

Under petitioner's interpretation, only law enforcement officers enforcing customs or excise laws were immune under the prior version of §2680(c).  Thus, on petitioner's reading, the amendment's only effect was to restore the waiver for cases in which customs or excise officers, or officers acting in such a capacity, enforce forfeiture laws. This strikes us as an implausible interpretation of the statute.  If that were Congress' intent, it is not apparent why Congress would have restored the waiver with respect to the enforcement of *all* civil forfeiture laws instead of simply those related to customs or excise.  Petitioner's interpretation makes sense only if we assume that Congress went out of its way to restore the waiver for cases in which customs or excise officers, or officers acting in such a capacity, enforce forfeiture laws unrelated to customs or excise.  But petitioner fails to demonstrate that customs or excise officers, or officers acting in such a capacity, ever enforce civil forfeiture laws unrelated to customs or excise, much less that they do so with such frequency that Congress is likely to have singled them out in the amendment.[5]  It seems far more likely that Congress restored the

––––––––––

[5]JUSTICE KENNEDY'S dissent (hereinafter the dissent) argues that, during border searches, customs and excise officers "routinely" enforce civil forfeiture laws unrelated to customs or excise.  *Post*, at 12–13.  But the examples the dissent provides do not support that assertion.  The dissent maintains that a customs officer who seizes material defined as contraband under 49 U. S. C. §80302 *et seq.*, is one such example.  *Post*, at 12–13.  But a customs officer's authority to effect a forfeiture of such contraband derives from a specific customs law.  See 19 U. S. C. §1595a(c)(1)(C).  Similarly, the dissent suggests that a DEA agent "assisting a customs official" in a border search who seizes drug-related contraband under 21 U. S. C. §881 is acting in a "traditional revenue capacity."  *Post*, at 12–13.  But that argument is based on the assump-

waiver for officers enforcing *any* civil forfeiture law be-
cause, in its view, *all* such officers were covered by the
exception to the waiver prior to the amendment.

Against this textual and structural evidence that "any
other law enforcement officer" does in fact mean any other
law enforcement officer, petitioner invokes numerous
canons of statutory construction. He relies primarily on
*ejusdem generis*, or the principle that "when a general
term follows a specific one, the general term should be
understood as a reference to subjects akin to the one with
specific enumeration." *Norfolk & Western R. Co.* v. *Train
Dispatchers*, 499 U. S. 117, 129 (1991). In petitioner's
view, "any officer of customs or excise or any other law
enforcement officer" should be read as a three-item list,
and the final, catchall phrase "any other law enforcement
officer" should be limited to officers of the same nature as
the preceding specific phrases.

Petitioner likens his case to two recent cases in which
we found the canon useful. In *Washington State Dept. of
Social and Health Servs.* v. *Guardianship Estate of Keffe-
ler*, 537 U. S. 371, 375 (2003), we considered the clause
"execution, levy, attachment, garnishment, or other legal

_____

tion that an officer who assists in conducting a border search acts in a
customs capacity even if he is not a customs officer and is not enforcing
a customs law. That assumption, far from self-evident, only under-
scores the difficulty that would attend any attempt to define the con-
tours of the implied limitation on §2680(c)'s reach proposed by peti-
tioner and embraced by the dissent. "Acting in a customs or excise
capacity" is not a self-defining concept, and not having included such a
limitation in the statute's language, Congress of course did not provide
a definition. Finally, the dissent points out that a customs or excise
officer might effect a forfeiture of currency or monetary instruments
under 31 U. S. C. §5317(c). *Post*, at 12–13. But §5317(c) is hardly a
civil forfeiture law unrelated to customs or excise. See §5317(c)(2)
(authorizing forfeiture of property involved in a violation of, *inter alia*,
§5316, which sets forth reporting requirements for exporting and
importing monetary instruments).

process" in 42 U. S. C. §407(a). Applying *ejusdem generis*, we concluded that "other legal process" was limited to legal processes of the same nature as the specific items listed. 537 U. S., at 384–385. The department's scheme for serving as a representative payee of the benefits due to children under its care, while a "legal process," did not share the common attribute of the listed items, viz., "utilization of some judicial or quasi-judicial mechanism . . . by which control over property passes from one person to another in order to discharge" a debt. 537 U. S., at 385. Similarly, in *Dolan* v. *Postal Service*, 546 U. S. 481 (2006), the Court considered whether an exception to the FTCA's waiver of sovereign immunity for claims arising out of the "'loss, miscarriage, or negligent transmission of letters or postal matter'" barred a claim that mail negligently left on the petitioner's porch caused her to slip and fall. *Id.,* at 485 (quoting 28 U. S. C. §2680(b)). Noting that "loss" and "miscarriage" both addressed "failings in the postal obligation to deliver mail in a timely manner to the right address," 546 U. S., at 487, the Court concluded that "negligent transmission" must be similarly limited, *id.*, at 486–489, and rejected the Government's argument that the exception applied to "all torts committed in the course of mail delivery," *id.*, at 490.

Petitioner asserts that §2680(c), like the clauses at issue in *Keffeler* and *Dolan*, '"presents a textbook *ejusdem generis* scenario.'" Brief for Petitioner 15 (quoting *Andrews* v. *United States*, 441 F. 3d 220, 224 (CA4 2006)). We disagree. The structure of the phrase "any officer of customs or excise or any other law enforcement officer" does not lend itself to application of the canon. The phrase is disjunctive, with one specific and one general category, not—like the clauses at issue in *Keffeler* and *Dolan*—a list of specific items separated by commas and followed by a general or collective term. The absence of a list of specific items undercuts the inference embodied in *ejusdem*

*generis* that Congress remained focused on the common attribute when it used the catchall phrase. Cf. *United States* v. *Aguilar*, 515 U. S. 593, 615 (1995) (SCALIA, J., concurring in part and dissenting in part) (rejecting the canon's applicability to an omnibus clause that was "one of . . . several distinct and independent prohibitions" rather than "a general or collective term following a list of specific items to which a particular statutory command is applicable").

Moreover, it is not apparent what common attribute connects the specific items in §2680(c). Were we to use the canon to limit the meaning of "any other law enforcement officer," we would be required to determine the relevant limiting characteristic of "officer of customs or excise." In *Jarecki* v. *G. D. Searle Co.*, 367 U. S. 303 (1961), for example, the Court invoked *noscitur a sociis* in limiting the scope of the term "'discovery'" to the common characteristic it shared with "'exploration'" and "'prospecting.'" *Id.*, at 307. The Court noted that all three words in conjunction "describe[d] income-producing activity in the oil and gas and mining industries." *Ibid.* Here, by contrast, no relevant common attribute immediately appears from the phrase "officer of customs or excise." Petitioner suggests that the common attribute is that both types of officers are charged with enforcing the customs and excise laws. But we see no reason why that should be the relevant characteristic as opposed to, for example, that officers of that type are commonly involved in the activities enumerated in the statute: the assessment and collection of taxes and customs duties and the detention of property.

Petitioner's appeals to other interpretive principles are also unconvincing. Petitioner contends that his reading is supported by the canon *noscitur a sociis*, according to which "a word is known by the company it keeps." *S. D. Warren Co.* v. *Maine Bd. of Environmental Protection*, 547 U. S. 370, 378 (2006). But the cases petitioner cites in

support of applying *noscitur a sociis* involved statutes with stronger contextual cues. See *Gutierrez* v. *Ada*, 528 U. S. 250, 254–258 (2000) (applying the canon to narrow the relevant phrase, "any election," where it was closely surrounded by six specific references to gubernatorial elections); *Jarecki*, *supra,* at 306–309 (applying the canon to narrow the term "discoveries" to discoveries of mineral resources where it was contained in a list of three words, all of which applied to the oil, gas, and mining industries and could not conceivably all apply to any other industry). Here, although customs and excise are mentioned twice in §2680(c), nothing in the overall statutory context suggests that customs and excise officers were the exclusive focus of the provision. The emphasis in subsection (c) on customs and excise is not inconsistent with the conclusion that "any other law enforcement officer" sweeps as broadly as its language suggests.

Similarly, the rule against superfluities lends petitioner sparse support. The construction we adopt today does not necessarily render "any officer of customs or excise" superfluous; Congress may have simply intended to remove any doubt that officers of customs or excise were included in "law enforcement officers." See *Fort Stewart Schools* v. *FLRA*, 495 U. S. 641, 646 (1990) (noting that "technically unnecessary" examples may have been "inserted out of an abundance of caution"). Moreover, petitioner's construction threatens to render "any other law enforcement officer" superfluous because it is not clear when, if ever, "other law enforcement officer[s]" act in a customs or excise capacity.[6] In any event, we do not woodenly apply

—————————

[6] As an example of "other law enforcement officer[s]" acting in an excise or customs capacity, petitioner cites *Formula One Motors, Ltd.* v. *United States*, 777 F. 2d 822, 823–824 (CA2 1985) (holding that the seizure of a vehicle still in transit from overseas by Drug Enforcement Administration (DEA) agents who searched it for drugs was "sufficiently akin to the functions carried out by Customs officials to place

limiting principles every time Congress includes a specific example along with a general phrase. See *Harrison*, 446 U. S., at 589, n. 6 (rejecting an argument that *ejusdem generis* must apply when a broad interpretation of the clause could render the specific enumerations unnecessary).

In the end, we are unpersuaded by petitioner's attempt to create ambiguity where the statute's text and structure suggest none. Had Congress intended to limit §2680(c)'s reach as petitioner contends, it easily could have written "any other law enforcement officer *acting in a customs or excise capacity*." Instead, it used the unmodified, all-encompassing phrase "any other law enforcement officer." Nothing in the statutory context requires a narrowing construction—indeed, as we have explained, the statute is most consistent and coherent when "any other law enforcement officer" is read to mean what it literally says. See *Norfolk & Western R. Co.*, 499 U. S., at 129 (noting that interpretive canons must yield "when the whole context dictates a different conclusion"). It bears emphasis, moreover, that §2680(c), far from maintaining sovereign immunity for the entire universe of claims against

―――――――

the agents' conduct within the scope of section 2680(c)"). But it is not clear that the agents in that case were acting in an excise or customs capacity rather than in their ordinary capacity as law enforcement agents. It seems to us that DEA agents searching a car for drugs are acting in their capacity as officers charged with enforcing the Nation's drug laws, not the customs or excise laws.

Similarly, the dissent notes that 14 U. S. C. §89(a) authorizes Coast Guard officers to enforce customs laws. *Post*, at 5-6. But the very next subsection of §89 provides that Coast Guard officers effectively *are* customs officers when they enforce customs laws. See §89(b)(1) (providing that Coast Guard officers "insofar as they are engaged, pursuant to the authority contained in this section, in enforcing any law of the United States shall . . . be deemed to be acting as agents of the particular executive department . . . charged with the administration of the particular law"). As a result, a Coast Guard officer enforcing a customs law is a customs officer, not some "other law enforcement officer."

law enforcement officers, does so only for claims "arising in respect of" the "detention" of property. We are not at liberty to rewrite the statute to reflect a meaning we deem more desirable.[7] Instead, we must give effect to the text Congress enacted: Section 2680(c) forecloses lawsuits against the United States for the unlawful detention of property by "any," not just "some," law enforcement officers.

## III

For the reasons stated, the judgment of the Court of Appeals for the Eleventh Circuit is

*Affirmed.*

---

[7]Congress, we note, did provide an administrative remedy for lost property claimants like petitioner. Federal agencies have authority under 31 U. S. C. §3723(a)(1) to settle certain "claim[s] for not more than $1,000 for damage to, or loss of, privately owned property that . . . is caused by the negligence of an officer or employee of the United States Government acting within the scope of employment." The BOP has settled more than 1,100 such claims in the last three years. Brief for Respondents 41, n. 17.

# SUPREME COURT OF THE UNITED STATES

———————

No. 06–9130

———————

## ABDUS-SHAHID M. S. ALI, PETITIONER *v.* FEDERAL BUREAU OF PRISONS ET AL.

ON WRIT OF CERTIORARI TO THE UNITED STATES COURT OF APPEALS FOR THE ELEVENTH CIRCUIT

[January 22, 2008]

JUSTICE KENNEDY, with whom JUSTICE STEVENS, JUSTICE SOUTER, and JUSTICE BREYER join, dissenting.

Statutory interpretation, from beginning to end, requires respect for the text. The respect is not enhanced, however, by decisions that foreclose consideration of the text within the whole context of the statute as a guide to determining a legislature's intent. To prevent textual analysis from becoming so rarefied that it departs from how a legislator most likely understood the words when he or she voted for the law, courts use certain interpretative rules to consider text within the statutory design. These canons do not demand wooden reliance and are not by themselves dispositive, but they do function as helpful guides in construing ambiguous statutory provisions. Two of these accepted rules are *ejusdem generis* and *noscitur a sociis,* which together instruct that words in a series should be interpreted in relation to one another.

Today the Court holds, if my understanding of its opinion is correct, that there is only one possible way to read the statute. Placing implicit reliance upon a comma at the beginning of a clause, the Court says that the two maxims noted, and indeed other helpful and recognized principles of statutory analysis, are not useful as interpretative aids in this case because the clause cannot be understood by what went before. In my respectful submission the

Court's approach is incorrect as a general rule and as applied to the statute now before us. Both the analytic framework and the specific interpretation the Court now employs become binding on the federal courts, which will confront other cases in which a series of words operate in a clause similar to the one we consider today. So this case is troubling not only for the result the Court reaches but also for the analysis it employs. My disagreements with the Court lead to this dissent.

## I

## A

The Federal Tort Claims Act (FTCA) allows those who allege injury from governmental actions over a vast sphere to seek damages for tortious conduct. The enacting Congress enumerated 13 exceptions to the Act's broad waiver of sovereign immunity, all of which shield the Government from suit in specific instances. These exceptions must be given careful consideration in order to prevent interference with the governmental operations described. As noted in *Kosak* v. *United States*, 465 U. S. 848, 853, n. 9 (1984), however, "unduly generous interpretations of the exceptions run the risk of defeating the central purpose of the statute."

As the Court states, at issue here is the extent of the exception for suits arising from the detention of goods in defined circumstances. The relevant provision excepts from the general waiver

> "claim[s] arising in respect of the assessment or collection of any tax or customs duty, or the detention of any goods, merchandise, or other property by any officer of customs or excise or any other law enforcement officer." 28 U. S. C. §2680(c).

Both on first reading and upon further, close consideration, the plain words of the statute indicate that the excep-

tion is concerned only with customs and taxes. The provision begins with a clause dealing exclusively with customs and tax duties. And the provision as a whole contains four express references to customs and tax, making revenue duties and customs and excise officers its most salient features. Cf. *Gutierrez* v. *Ada*, 528 U. S. 250, 254–255 (2000).

This is not to suggest that the Court's reading is wholly impermissible or without some grammatical support. After all, detention of goods is not stated until the outset of the second clause and at the end of the same clause the words "any other law enforcement officer" appear; so it can be argued that the first and second clauses of the provision are so separate that all detentions by all law enforcement officers in whatever capacity they might act are covered. Still, this ought not be the preferred reading; for between the beginning of the second clause and its closing reference to "any other law enforcement officer" appears another reference to "officer[s] of customs or excise," this time in the context of property detention. This is quite sufficient, in my view, to continue the limited scope of the exception. At the very least, the Court errs by adopting a rule which simply bars all consideration of the canons of *ejusdem generis* and *noscitur a sociis.* And when those canons are consulted, together with other common principles of interpretation, the case for limiting the exception to customs and tax more than overcomes the position maintained by the Government and adopted by the Court.

The *ejusdem generis* canon provides that, where a seemingly broad clause constitutes a residual phrase, it must be controlled by, and defined with reference to, the "enumerated categories . . . which are recited just before it," so that the clause encompasses only objects similar in nature. *Circuit City Stores, Inc.* v. *Adams*, 532 U. S. 105, 115 (2001). The words "any other law enforcement officer" immediately follow the statute's reference to "officer[s] of

customs or excise," as well as the first clause's reference to the assessment of tax and customs duties. 28 U. S. C. §2680(c).

The Court counters that §2680(c) "is disjunctive, with one specific and one general category," rendering *ejusdem generis* inapplicable. *Ante*, at 10. The canon's applicability, however, is not limited to those statutes that include a laundry list of items. See, *e.g., Norfolk & Western R. Co.* v. *Train Dispatchers*, 499 U. S. 117, 129 (1991) ("[W]hen a general term follows a specific one, the general term should be understood as a reference to subjects akin to the one with specific enumeration"). In addition, *ejusdem generis* is often invoked in conjunction with the interpretative canon *noscitur a sociis,* which provides that words are to be "'known by their companions.'" *Washington State Dept. of Social and Health Servs.* v. *Guardianship Estate of Keffeler*, 537 U. S. 371, 384 (2003) (quoting *Gutierrez, supra,* at 255). The general rule is that the "meaning of a word, and, consequently, the intention of the legislature," should be "ascertained by reference to the context, and by considering whether the word in question and the surrounding words are, in fact, *ejusdem generis*, and referable to the same subject-matter." *Neal* v. *Clark*, 95 U. S. 704, 709 (1878) (internal quotation marks omitted)).

A proper reading of §2680(c) thus attributes to the last phrase ("any other law enforcement officer") the discrete characteristic shared by the preceding phrases ("officer[s] of customs or excise" and "assessment or collection of any tax or customs duty"). See also *Norton* v. *Southern Utah Wilderness Alliance*, 542 U. S. 55, 62–63 (2004) (applying *ejusdem generis* to conclude that "'failure to act'" means "failure to take an *agency action*" (emphasis in original)); *Washington State Dept. of Social and Health Servs.*, *supra,* at 384–385 (holding that the phrase "other legal process" in 42 U. S. C. §407(a) refers only to the utilization of a judicial or quasi-judicial mechanism, the common attrib-

ute shared by the phrase and the statutory enumeration preceding it). Had Congress intended otherwise, in all likelihood it would have drafted the section to apply to "any law enforcement officer, including officers of customs and excise," rather than tacking "any other law enforcement officer" on the end of the enumerated categories as it did here.

The common attribute of officers of customs and excise and other law enforcement officers is the performance of functions most often assigned to revenue officers, including, *inter alia,* the enforcement of the United States' revenue laws and the conduct of border searches. Although officers of customs and officers of excise are in most instances the only full-time staff charged with this duty, officers of other federal agencies and general law enforcement officers often will be called upon to act in the traditional capacity of a revenue officer. For example, Drug Enforcement Administration (DEA) or Federal Bureau of Investigation (FBI) agents frequently assist customs officials in the execution of border searches. See, *e.g., United States* v. *Gurr*, 471 F. 3d 144, 147–149 (CADC 2006) (FBI involved in search of financial documents at border); *United States* v. *Boumelhem*, 339 F. 3d 414, 424 (CA6 2003) ("FBI had been cooperating with Customs as a part of a joint task force"); *Formula One Motors, Ltd.* v. *United States*, 777 F. 2d 822, 824 (CA2 1985) (DEA agents were performing functions traditionally carried out by Customs officials where they seized and searched an automobile that had been shipped from abroad and was still in its shipping container). Cf. *United States* v. *Schoor*, 597 F. 2d 1303, 1305–1306 (CA9 1979) (upholding constitutionality of cooperation amongst federal agencies in border searches). Similarly, 14 U. S. C. §89(a) grants the Coast Guard plenary authority to stop and board American vessels to inspect for obvious customs violations. See, *e.g., United States* v. *Gil-Carmona*, 497 F. 3d 52 (CA1

2007) (Coast Guard assisted an Immigration and Customs Enforcement patrol aircraft in interdicting a vessel off the coast of Puerto Rico). To the extent they detain goods whose possession violates customs laws, the Coast Guard officers—while not "officer[s] of customs or excise," 28 U. S. C. §2680(c)—are without doubt engaging in the enforcement of the United States' revenue laws.

The same is true in the tax context. Under 26 U. S. C. §6321, a delinquent taxpayer's property is subject to forfeiture, see *Glass City Bank* v. *United States*, 326 U. S. 265 (1945), and may be seized by any federal agent assisting the Internal Revenue Service (IRS) in executing the forfeiture, cf. *United States* v. *$515,060.42 in United States Currency*, 152 F. 3d 491, 495 (CA6 1998) (IRS and FBI jointly seized currency). Thus, the final phrase "any other law enforcement officer" has work to do and makes considerable sense when the statute is limited in this way.

## B

The Court reaches its contrary conclusion by concentrating on the word "any" before the phrase "other law enforcement officer." 28 U. S. C. §2680(c). It takes this single last phrase to extend the statute so that it covers all detentions of property by any law enforcement officer in whatever capacity he or she acts. There are fundamental problems with this approach, in addition to the ones already mentioned.

First, the Court's analysis cannot be squared with the longstanding recognition that a single word must not be read in isolation but instead defined by reference to its statutory context. See *King* v. *St. Vincent's Hospital*, 502 U. S. 215, 221 (1991) ("[T]he meaning of statutory language, plain or not, depends on context"); *Dolan* v. *Postal Service*, 546 U. S. 481, 486 (2006) ("A word in a statute may or may not extend to the outer limits of its definitional possibilities. Interpretation of a word or phrase

depends upon reading the whole statutory text, consider-
ing the purpose and context of the statute, and consulting
any precedents or authorities that inform the analysis").
This is true even of facially broad modifiers. The word
"any" can mean "different things depending upon the
setting," *Nixon* v. *Missouri Municipal League*, 541 U. S.
125, 132 (2004); see also *Small* v. *United States*, 544 U. S.
385, 388 (2005) (citing cases), and must be limited in its
application "to those objects to which the legislature in-
tended to apply them," *United States* v. *Palmer*, 3 Wheat.
610, 631 (1818).

In *Gutierrez,* 528 U. S., at 254–255, for example, we held
that the phrase "in any election" in the Organic Act of
Guam, 48 U. S. C. §1422, does not refer broadly to all
elections but only to the election of Guam's Governor and
Lieutenant Governor. The Court explained that the refer-
ence to "any election" is preceded by two references to
gubernatorial elections and followed by four more refer-
ences. In the context of such "relentless repetition," the
Court concluded that the phrase must be "known by [its]
companions." 528 U. S., at 255. Likewise, in *United
States* v. *Alvarez-Sanchez*, 511 U. S. 350, 357 (1994), the
Court addressed a phrase similar to the statutory provi-
sion we interpret today. The Court noted that the respon-
dent erred in "placing dispositive weight on the broad
statutory reference to 'any' law enforcement officer or
agency without considering the rest of the statute," and
consulted instead "'the context in which [the phrase] is
used.'" *Id.,* at 358 (quoting *Deal* v. *United States*, 508
U. S. 129, 132 (1993); alteration in original).

As already mentioned, the context of §2680(c) suggests
that, in accordance with these precedents, the statutory
provision should be interpreted narrowly to apply only to
customs and revenue duties. Its first clause deals exclu-
sively with customs and tax duties and, between the first
and second clauses, it refers two more times to customs

and tax. See *Gutierrez, supra,* at 254–255; *A-Mark, Inc.* v. *United States Secret Serv. Dept. of Treasury*, 593 F. 2d 849, 851 (CA9 1978) (Tang, J., concurring) ("The clauses both dwell exclusively on customs and taxes, except for the final reference to other law-enforcement officers").

Further, §2680(c) provides that there will be immunity only where there has been a "detention" of goods, merchandise, or property. "[D]etention" is defined by legal and nonlegal dictionaries alike as a "compulsory," "forced," or "punitive" containment. Black's Law Dictionary 459 (7th ed. 1999) (compulsory); American Heritage Dictionary 494 (4th ed. 2000) (forced or punitive). The issue whether petitioner's property was "detained" within the meaning of the statute was not raised in this case; and so the Court leaves for another day the exception's applicability to these facts. See *ante,* at 4, n. 2. It is important, however, to bear in mind that, in the context of detention of goods by customs and tax agents, it will be the rare case when property is voluntarily turned over, rather than forcibly appropriated; indeed, customs and tax agents are in the regular business of seizing and forfeiting property, as are law enforcement agents acting in the capacity of revenue enforcement. See Dept. of Homeland Security, U. S. Customs and Border Protection and U. S. Immigration and Customs Enforcement, Mid-Year FY 2007—Top IPR Commodities Seized (May 2007), online at http://www.cbp.gov/linkhandler/cgov/import/commercial_enforcement/ipr/seizure/07_midyr_seizures.ctt/07_midyr_seizures.pdf (all Internet materials as visited Jan. 10, 2008, and available in Clerk of Court's case file) (by midyear 2007, customs officials had executed 7,245 commodity seizures, worth a total of $110,198,350); GAO, Border Security: Despite Progress, Weaknesses in Traveler Inspections Exist at Our Nation's Ports of Entry 17 (GAD–08–219, Nov. 2007), http://www.gao.gov/new.items/d08219.pdf ("According to [U. S. Customs and Border Protection] CBP,

in fiscal year 2006, CBP officers . . . seized more than 644,000 pounds of illegal drugs, intercepted nearly 1.7 million prohibited agricultural items, and seized over $155 million in illegal commercial merchandise, such as counterfeit footwear and handbags" (footnote omitted)).

In other contexts, however, the word "detention" may or may not accurately describe the nature of the Government action. A prisoner's voluntary decision to deliver property for transfer to another facility, for example, bears a greater similarity to a "bailment"—the delivery of personal property after being held by the prison in trust, see American Heritage Dictionary, *supra,* at 134—than to a "detention."

Not a single federal statute mentions the Federal Bureau of Prisons in the context of property detention. On the other hand, the majority of the nine federal statutes other than §2680(c) containing a reference to the detention of goods, merchandise, or other property are specific to customs and excise. Compare 19 U. S. C. §1499(a) (authorizing customs agents to examine and detain imported merchandise); §1595a(c)(3) (authorizing customs officials to detain merchandise introduced contrary to law); 26 U. S. C. §5311 (authorizing internal revenue officers to detain containers containing distilled spirits, wines, or beer where there is reason to believe applicable taxes have not been paid); 50 U. S. C. App. §2411(a)(2)(A) (authorizing customs officials to seize and detain goods at ports of entry in the enforcement of war and national defense); 22 U. S. C. §464 (authorizing customs agents to detain armed vessels and any property found thereon); with 18 U. S. C. §981(e) ("The Attorney General, the Secretary of the Treasury, or the Postal Service, as the case may be, shall ensure the equitable transfer pursuant to paragraph (2) of any forfeited property to the appropriate State or local law enforcement agency . . . . The United States shall not be liable in any action arising out of the seizure, detention,

and transfer of seized property to State or local officials"); 28 U. S. C. §524(c)(1) (2000 ed. and Supp. V) (appropriating a special fund for the purpose of property detention under any law enforced or administered by the Department of Justice); 31 U. S. C. §9703(a)(1)(A) (establishing a Department of Treasury Forfeiture Fund to pay the expenses of property detention); 16 U. S. C. §§1540(e)(3), 3375(b) (authorizing the detention of goods and packages for inspection where there is reason to believe there has been a violation of laws governing fish, wildlife, and plants).

This would seem to indicate that Congress contemplated that the statutory provision considered here would apply only in those narrow circumstances where the officer is in the regular business of forfeiting property, namely revenue enforcement. At the very least, it demonstrates that "detention" will be a difficult concept to apply case-by-case under the majority's interpretation of the statute—a problem alleviated by limiting the statute to customs and tax.

Second, the Court's construction of the phrase "any other law enforcement officer" runs contrary to "'our duty "to give effect, if possible, to every clause and word of a statute."'" *Duncan* v. *Walker*, 533 U. S. 167, 174 (2001) (quoting *United States* v. *Menasche*, 348 U. S. 528, 538–539 (1955)). The Court's reading renders "officer[s] of customs or excise" mere surplusage, as there would have been no need for Congress to have specified that officers of customs and officers of excise were immune if they indeed were subsumed within the allegedly all-encompassing "any" officer clause. See *Circuit City Stores,* 532 U. S., at 114.

Third, though the final reference to "any other law enforcement officer" does result in some ambiguity, the legislative history, by virtue of its exclusive reference to customs and excise, confirms that Congress did not shift

its attention from the context of revenue enforcement when it used these words at the end of the statute. See, *e.g.,* S. Rep. No. 1400, 79th Cong., 2d Sess., 33 (1946) (in discussing 28 U. S. C. §2680(c) referring only to "the detention of goods by customs officers"); A. Holtzoff, Report on Proposed Federal Tort Claims Bill 16 (1931) (noting that the property-detention exception was added to the legislation to "include immunity from liability in respect of loss in connection with the detention of goods or merchandise by any officer of customs or excise").

Indeed, the Court's construction reads the exception to defeat the central purpose of the statute, an interpretative danger the Court has warned against in explicit terms. See *Kosak*, 465 U. S., at 854, n. 9 (the Court must identify only " 'those circumstances which are within the words and reason of the exception'—no less and no more" (quoting *Dalehite* v. *United States*, 346 U. S. 15, 31 (1953)). It is difficult to conceive that the FTCA, which was enacted by Congress to make the tort liability of the United States "the same as that of a private person under like circumstance[s]," S. Rep. No. 1400, at 32, would allow any officer under any circumstance to detain property without being accountable under the Act to those injured by his or her tortious conduct. If Congress wanted to say that all law enforcement officers may detain property without liability in tort, including when they perform general law enforcement tasks, it would have done so in more express terms; one would expect at least a reference to law enforcement officers outside the customs or excise context either in the text of the statute or in the legislative history. In the absence of that reference, the Court ought not presume that the liberties of the person who owns the property would be so lightly dismissed and disregarded.

## II

## A

The 2000 amendments do not require a contrary conclusion. The Civil Asset Forfeiture Reform Act of 2000 (CAFRA), as applicable here, limits the operation of §2680(c)'s exception. See §3(a), 114 Stat. 211. The limitation (*i.e.* the exception to the exception) applies where there has been an injury or loss of goods and "the property was seized for the purpose of forfeiture under any provision of Federal law." 28 U. S. C. §2680(c)(1). In my view the amendment establishes that officers of customs and excise, and law enforcement officials performing functions traditionally reserved for revenue officers, shall be liable in tort for damage to the property when the owner's interest in the goods in the end is not forfeited (and when other conditions apply). And this is so regardless of whether the officer acted under the revenue laws of the United States or, alternatively, another civil or criminal forfeiture provision.

The majority's reading of CAFRA for a contrary proposition is premised on the assumption that there is no circumstance in which a customs or excise officer, or a officer acting in such a capacity, would "enforce civil forfeiture laws unrelated to customs or excise." *Ante,* at 9. But customs and tax officials, along with law enforcement officers performing customs and tax duties, routinely do just that. See, *e.g.,* Customs and Border Protection, Seizures and Penalties Links, http://www.cbp.gov/xp/cgov/toolbox/legal/authority_enforce/seizures_penalties.xml (CBP has "full authority to . . . seize merchandise for violation of CBP laws or those of other federal agencies that are enforced by CBP"). Indeed, the customs laws expressly contemplate forfeitures and seizures of property under nonrevenue provisions. See, *e.g.,* 19 U. S. C. §1600 ("The procedures [governing seizures of property] set forth in [§§1602–1619] shall apply to seizures of any property

effected by customs officers under any law enforced or administered by the Customs Service unless such law specifies different procedures").

By way of example, a customs or excise official might effect a civil forfeiture of currency or monetary instruments under the Bank Secrecy Act, 31 U. S. C. §5317(c) (2000 ed., Supp. V); or of counterfeit instruments, illegal music recordings, or firearms under the Contraband Act, 49 U. S. C. §80302 *et seq.* Similarly, a DEA agent assisting a customs official in a border search (and thus acting in a customs capacity) might effect a civil forfeiture of vehicles or goods associated with the drug trade under federal drug laws. See 21 U. S. C. §881; see also, *e.g., Formula One Motors,* 777 F. 2d, at 822–823. Though acting pursuant to a civil forfeiture law that is not specific to customs and taxes, the DEA agent would be covered by §2680(c)'s exception to the exception because he or she would be acting in a traditional revenue capacity—that of conducting a routine search of persons and effects of persons crossing an international boundary.

The Court counters that the Bank Secrecy Act, 31 U. S. C. §5317(c), is not "unrelated to customs or excise" because it cross-references a requirement for exporting and importing monetary instruments, §5316. See *ante,* at 8, n. 5. But §5316, despite being "[r]elated" to customs duties, is part of the federal Currency and Foreign Transactions Reporting Act, see §5311 *et seq.* (2000 ed. and Supp. IV), not the United States' customs laws.

The Court also notes that customs agents have the authority to seize contraband under the customs laws, particularly 19 U. S. C. §1595a(c)(1). I do not dispute that customs agents often act under customs laws when seizing property. My point, which goes unrefuted by the Court, is that it was reasonable for Congress to have specified that customs and excise officers would be covered by the exception to the exception even when acting pursuant to federal

laws more generally. For instance, §1595a(c)(1) applies only where "[m]erchandise . . . is introduced . . . into the United States contrary to law," which appears to target the importation of property subject to duty or entry restrictions. Title 28 U. S. C. §2680(c), by contrast, was amended in 2000 to encompass not only the detention of "goods or merchandise" but the detention of all "property." §3(a), 114 Stat. 211. In circumstances not involving imported "merchandise," then, the customs official would be acting pursuant to law enforcement authority derived not from the customs laws but, *inter alia,* the Contraband and Bank Secrecy Acts. The same is true of noncustoms officers acting in a customs capacity.

At the very least this renders the Court's reliance on the views of a subsequent Congress suspect. We have said "subsequent acts can shape or focus" the meaning of a statute. *FDA* v. *Brown & Williamson Tobacco Corp.*, 529 U. S. 120, 143 (2000). There is no indication, however, that by adding a forfeiture exception to the exception, Congress intended to broaden the scope of the original immunity. Cf. *SEC* v. *Capital Gains Research Bureau, Inc.*, 375 U. S. 180, 199–200 (1963).

B

Though the Court does not much rely on the point, perhaps it has concerns respecting suits like the one now before us. Petitioner sues for lost property valued at about $177. Law enforcement officers in the federal prison system must take inventory of the property they store, and with just under 200,000 persons in the federal prison population, see Federal Bureau of Prisons, Weekly Population Report, online at http://www.bop.gov/news/weekly_report.jsp (reporting 199,342 federal inmates as of January 7, 2008), the burden on the Government to account for missing items of little value could be a substantial one.

There are sound reasons, though, for rejecting this concern in interpreting the statute. To begin with, as already discussed, if it were a congressional objective to give a comprehensive exception to all officers who detain property, Congress most likely would have written a specific provision to address the point, quite apart from the special concerns it had with customs and revenue. The exception as the Court now interprets it extends not only to trivial detentions, not only to prison officials, not only to those in custody, but to all detentions of property of whatever value held by all law enforcement officials, a reading that simply does not comport with the plain text and context of the statute.

Second, as the Court observed when interpreting another exception that raised the concern of numerous frivolous claims, liability for negligent transmission "is a risk shared by any business [involved in management of detention facilities]," including the Government. *Dolan*, 546 U. S., at 491.

Third, there are already in place administrative procedures that must be exhausted before the suit is allowed, diminishing the number of frivolous suits that would be heard in federal court. See 42 U. S. C. §1997e(a) ("No action shall be brought with respect to prison conditions under section 1983 of this title, or any other Federal law, by a prisoner confined in any jail, prison, or other correctional facility until such administrative remedies as are available are exhausted"). Under 28 CFR §543.31(a) (2007), the "owner of the damaged or lost property" first must file an FTCA claim with the Bureau of Prisons (BOP) regional office; the BOP, in turn, is authorized by statute to settle administrative claims for not more than $1,000, see 31 U. S. C. §3723(a), which likely encompasses most claims brought by federal prisoners. Only if the prisoner is "dissatisfied with the final agency action" may he or she file suit in an "appropriate U. S. District Court." 28 CFR

§543.32(g).

\*     \*     \*

If Congress had intended to give sweeping immunity to all federal law enforcement officials from liability for the detention of property, it would not have dropped this phrase onto the end of the statutory clause so as to appear there as something of an afterthought.  The seizure of property by an officer raises serious concerns for the liberty of our people and the Act should not be read to permit appropriation of property without a remedy in tort by language so obscure and indirect.

For these reasons, in my view, the judgment of the Court of Appeals ought to be reversed.

# SUPREME COURT OF THE UNITED STATES

_____

No. 06–9130

_____

ABDUS-SHAHID M. S. ALI, PETITIONER *v.* FEDERAL BUREAU OF PRISONS ET AL.

ON WRIT OF CERTIORARI TO THE UNITED STATES COURT OF APPEALS FOR THE ELEVENTH CIRCUIT

[January 22, 2008]

JUSTICE BREYER, with whom JUSTICE STEVENS joins, dissenting.

I agree with JUSTICE KENNEDY that context makes clear that Congress intended the phrase "any other law enforcement officer" to apply only to officers carrying out customs or excise duties. See 28 U. S. C. §2680(c). But I write separately to emphasize, as JUSTICE KENNEDY's dissent itself makes clear, that the relevant context extends well beyond Latin canons and other such purely textual devices.

As with many questions of statutory interpretation, the issue here is not the *meaning* of the words. The dictionary meaning of each word is well known. Rather, the issue is the statute's *scope*. What boundaries did Congress intend to set? To what circumstances did Congress intend the phrase, as used in *this* statutory provision, to apply? The majority answers this question by referring to an amendment that creates an exception for certain forfeitures and by emphasizing the statutory word "any." As to the amendment, I find JUSTICE KENNEDY's counterargument convincing. See *ante*, at 11–13. And, in my view, the word "any" provides no help whatsoever.

The word "any" is of no help because all speakers (including writers and legislators) who use general words such as "all," "any," "never," and "none" normally rely upon context to indicate the limits of time and place

within which they intend those words to do their linguistic work.  And with the possible exception of the assertion of a universal truth, say by a mathematician, scientist, philosopher, or theologian, such limits almost always exist. When I call out to my wife, "There isn't any butter," I do not mean, "There isn't any butter in town."  The context makes clear to her that I am talking about the contents of our refrigerator.  That is to say, it is context, not a dictionary, that sets the boundaries of time, place, and circumstance within which words such as "any" will apply.  See *United States* v. *Palmer*, 3 Wheat. 610, 631 (1818) (Marshall, C. J.) ("[G]eneral words," such as the word "'any'," must "be limited" in their application "to those objects to which the legislature intended to apply them"); *Small* v. *United States*, 544 U. S. 385, 388 (2005) ("The word 'any' considered alone cannot answer" the question "whether the statutory reference 'convicted in *any* court' includes a conviction entered in a *foreign* court"); *Nixon* v. *Missouri Municipal League*, 541 U. S. 125, 132 (2004) ("'[A]ny'" means "different things depending upon the setting"); *United States* v. *Alvarez-Sanchez*, 511 U. S. 350, 357 (1994) ("[R]espondent errs in placing dispositive weight on the broad statutory reference to 'any' law enforcement officer or agency without considering the rest of the statute").

   Context, of course, includes the words immediately surrounding the phrase in question.  And canons such as *ejusdem generis* and *noscitur a sociis* offer help in evaluating the significance of those surrounding words.  Yet that help is limited.  That is because other contextual features can show that Congress intended a phrase to apply more broadly than the immediately surrounding words by themselves suggest.  See *Circuit City Stores, Inc.* v. *Adams*, 532 U. S. 105, 138–140 (2001) (SOUTER, J., dissenting) (finding "good reasons" not to apply *ejusdem generis* because the statute's history and purposes make clear that

the words "any other class of workers" in the phrase "sea-men, railroad employees, or any other class of workers" refer, not just to other transportation workers, but to workers of all kinds including retail store clerks). It is because canons of construction are not "conclusive" and "are often countered . . . by some maxim pointing in a different direction." *Id.*, at 115 (majority opinion). And it is because these particular canons simply crystallize what English speakers already know, namely, that lists often (but not always) group together items with similar characteristics. (That is why we cannot, without comic effect, yoke radically different nouns to a single verb, *e.g.*, "He caught three salmon, two trout, and a cold.")

In this case, not only the immediately surrounding words but also every other contextual feature supports JUSTICE KENNEDY's conclusion. The textual context in-cludes the location of the phrase within a provision that otherwise exclusively concerns customs and revenue du-ties. And the nontextual context includes several features that, taken together, indicate that Congress intended a narrow tort-liability exception related to customs and excise.

First, drafting history shows that the relevant portion of the bill that became the Federal Tort Claims Act con-cerned only customs and excise. Initially, the relevant provision of the bill exempted only claims "arising in respect of the assessment or collection of any tax or cus-toms duty." See, *e.g.*, S. 4377, 71st Cong., 2d Sess., p. 4 (1930). In 1931, a Special Assistant to the Attorney Gen-eral, Alexander Holtzoff, wrote additional draft language, namely, "or the detention of any goods or merchandise by any officer of customs or excise or *any other law enforce-ment officer*." Report on Proposed Federal Tort Claims Bill 2 (1931) (emphasis added). Holtzoff, in a report to a congressional agency, said that the expanded language sought "to include immunity from liability in respect of

loss in connection with the detention of goods or merchandise by any officer of customs or excise." *Id.,* at 16. Holtzoff explained that the language was suggested by a similar British bill that mentioned only customs and excise officials. *Ibid.* (referring to the bill proposed in the Crown Proceedings Committee Report §11(5)(*c*), pp. 17–18 (Apr. 1927) (Cmd. 2842) ("No proceedings shall lie under this section . . . for or in respect of the loss of or any deterioration or damage occasioned to, or any delay in the release of, any goods or merchandise by reason of anything done or omitted to be done by any officer of customs and excise acting as such")); see *Kosak* v. *United States*, 465 U. S. 848, 857, n. 13 (1984) (While "the ideas expressed [in Holtzoff's report] should not be given great weight in determining the intent of the Legislature," at least in some circumstances, "it seems to us senseless to ignore entirely the views of [the provision's] draftsman"). And Members of Congress repeatedly referred to the exception as encompassing claims involving customs and excise functions. See, *e.g.*, H. R. Rep. No. 2428, 76th Cong., 3d Sess., p. 5 (1940); S. Rep. No. 1196, 77th Cong., 2d Sess., p. 7 (1942); H. R. Rep. No. 2245, 77th Cong., 2d Sess., p. 10 (1942); H. R. Rep. No. 1287, 79th Cong., 1st Sess., p. 6 (1945); S. Rep. No. 1400, 79th Cong., 2d Sess., p. 33 (1946).

Second, insofar as Congress sought, through the Act's exceptions, to preclude tort suits against the Government where "adequate remedies were already available," *Kosak*, *supra*, at 858; see S. Rep. No. 1400, *supra,* at 33; H. R. Rep. No. 1287, *supra,* at 6 (setting forth that purpose), a limited exception makes sense; a broad exception does not. Other statutes already provided recovery for plaintiffs harmed by federal officers enforcing customs and tax laws but not for plaintiffs harmed by all other federal officers enforcing most other laws. See *Bazuaye* v. *United States*, 83 F. 3d 482, 485–486 (CADC 1996) (detailing history).

Third, the practical difference between a limited and a

broad interpretation is considerable, magnifying the importance of the congressional silence to which JUSTICE KENNEDY points, see *ante*, at 11. A limited interpretation of the phrase "any other law enforcement officer" would likely encompass only those law enforcement officers working, say, at borders and helping to enforce customs and excise laws. The majority instead interprets this provision to include the tens of thousands of officers performing unrelated tasks. The Justice Department estimates that there are more than 100,000 law enforcement officers, not including members of the armed services. See, *e.g.*, Dept. of Justice, Bureau of Justice Statistics Bulletin, Federal Law Enforcement Officers, 2004, p. 1 (July 2006). And although the law's history contains much that indicates the provision's scope is limited to customs and excise, it contains *nothing at all* suggesting an intent to apply the provision more broadly, indeed, to multiply the number of officers to whom it applies by what is likely one or more orders of magnitude. It is thus not the Latin canons, *ejusdem generis* and *noscitur a sociis,* that shed light on the application of the statutory phrase but JUSTICE SCALIA's more pertinent and easily remembered English-language observation that Congress "does not . . . hide elephants in mouseholes." *Whitman* v. *American Trucking Assns., Inc.*, 531 U. S. 457, 468 (2001).

For these reasons, I dissent and I join JUSTICE KENNEDY's dissent.