# United States Court of Appeals
## For the First Circuit

No. 05-1425

UNITED STATES OF AMERICA,

Appellee,

v.

FERNANDO GIL-CARMONA,

Defendant, Appellant.

APPEAL FROM THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF PUERTO RICO

[Hon. Jay A. García-Gregory, U.S. District Judge]

Before

Torruella, Circuit Judge,
Cyr, Senior Circuit Judge,
and Howard, Circuit Judge.

Kenneth J. Rodríguez, with whom Joseph S. Berman and Berman & Dowell were on brief, for appellant.
Nelson Pérez-Sosa, Assistant United States Attorney, Chief, Appellate Division, with whom Rosa Emilia Rodríguez-Vélez, United States Attorney, was on brief, for appellee.

July 27, 2007

**TORRUELLA**, **Circuit Judge**. On March 26, 2004, a jury found Appellant, Fernando Gil Carmona ("Gil"), guilty of: (1) possession with intent to distribute five kilograms or more of cocaine, in violation of the Maritime Drug Law Enforcement Act ("MDLEA"), 46 U.S.C. § 70503(a),[1] and (2) conspiracy to possess with intent to distribute more than five kilograms of cocaine, in violation of 46 U.S.C. § 70506(b).[2] On appeal, we face a question of first impression for this Court: whether the jurisdictional component of the MDLEA, 46 U.S.C. § 70504(a), violates the Fifth and Sixth Amendments. Without reaching the merits, we find that any potential error by the district court was harmless.

## I. Background

Gil is a Colombian national. His legal troubles began on the morning of October 17, 2003, when he and two other individuals departed the Dominican Republic on a vessel bound for Puerto Rico. That evening, a patrol aircraft of the U.S. Immigration and Customs Enforcement Agency ("ICE") spotted Gil's vessel approximately twenty-five nautical miles northwest of Puerto Rico--i.e., one nautical mile outside the twenty-four mile contiguous zone of the

---

[1] The briefs and relevant cases cite to the MDLEA under the now repealed 46 U.S.C. app. §§ 1901 et seq. (repealed 2006). We will cite to the MDLEA's codification at 46 U.S.C. §§ 70501 et seq. (Supp. 2006).

[2] Appellant was also convicted of attempting into import to the United States five kilograms or more of cocaine, in violation of 21 U.S.C. § 952(a).

-2-

United States. The vessel was traveling without lights southeast towards Puerto Rico at a speed of ten to twelve knots. In the early morning of October 18, 2003, the United States Coast Guard ("USCG") Cutter NORTHLAND initiated pursuit of the vessel. When the NORTHLAND encountered the vessel, it was dead in the water. As the NORTHLAND approached, the vessel started its engine and continued on a southeast course towards Puerto Rico. While in pursuit, the NORTHLAND's crew observed the occupants of the vessel dumping bales of cocaine overboard. The NORTHLAND then requested assistance from an ICE Marine Unit. The ICE unit interdicted the vessel approximately twenty-one to twenty-two nautical miles northwest of Puerto Rico,[3] apprehended Gil, and transported him to Puerto Rico, where he was arrested. The vessel did not have a flag, identifying marks, or paperwork establishing that it was registered in any nation. After the interception of the vessel, the USCG recovered fifteen bales from the area where the vessel was interdicted. The bales contained over 300 kilograms of cocaine.

At trial, the district court stated that the MDLEA's jurisdictional provision, 46 U.S.C. § 70504(a),[4] requires the trial

---

[3] The record indicates that this area, approximately twenty miles northwest of Punta Borinquen and fifteen miles north of Desecheo Island, is a common entrance point for vessels carrying contraband and illegal aliens.

[4] Section 70504(a) states in relevant part that "[j]urisdiction of the United States with respect to a vessel subject to this chapter is not an element of an offense. Jurisdictional issues arising under this chapter are preliminary questions of law to be

judge to decide whether a vessel is subject to the jurisdiction of the United States as a preliminary issue of law, rather than submit the issue to the jury. Accordingly, the court said that it would hear testimony to ascertain whether the United States had jurisdiction over the vessel.

The Government argued to the district court that the vessel was subject to United States jurisdiction under § 70502(c)(1)(F),[5] because the vessel was interdicted within the twenty-five mile contiguous zone from the shores of the United States,[6] and the vessel was "entering the United States" or was a "hovering vessel."[7]

---

determined solely by the trial judge."

[5] Section 70502(c)(1)(F) establishes that: "(1) In this Chapter, the term 'vessel subject to the jurisdiction of the United States' includes- (F) a vessel in the contiguous zone of the United States . . . , that (i) is entering the United States; (ii) has departed the United States; or (iii) is a hovering vessel . . . ."

[6] Presidential Proclamation 7219 of August 2, 1999 defines the contiguous zone of the United States to extend to twenty-four nautical miles from the baselines of the United States, including the Commonwealth of Puerto Rico. Proclamation No. 7219, 64 Fed. Reg. 48,701 (Sept. 8, 1999).

[7] A "hovering vessel" is defined as:

(1) any vessel which is found or kept off the coast of the United States within or without the customs waters, if, from the history, conduct, character or location of the vessel, it is reasonable to believe that such vessel is being used or may be used to introduce or promote or facilitate the introduction or attempted introduction of merchandise into the United States in violation of the laws of the United States; and
(2) any vessel which has visited a vessel described in

-4-

Gil argued that it is unconstitutional for a judge to decide whether the "vessel [was] subject to the jurisdiction of the United States" because the decision requires factual determinations regarding the location of the vessel which should be decided by a jury. Relying on the express language of the statute, the district court disagreed and ruled that the United States had jurisdiction over the vessel as a matter of law. Gil renewed his challenge to § 70504(a) at the close of evidence, and the motion was again denied. Subsequently, the district court instructed the jury: "You are instructed as a matter of law that the vessel in question is a vessel subject to the jurisdiction of the United States. I have made that determination."

## II. Discussion

The issue before this Court is whether the MDLEA's requirement that a "vessel [be] subject to the jurisdiction of the United States" is an essential element of the crime to be determined by a jury, rather than by a judge, as mandated by Congress in § 70504(a). We do not, however, have to reach the merits of this decision because, we find that the record compels the finding that if there was any error below, it was harmless.

A defendant's claim that his constitutional rights were violated by the removal of an element of the uncharged offense from

paragraph (1).
19 U.S.C. § 1401(k).

-5-

the jury's consideration is ordinarily reviewed for harmless error. Neder v. United States, 527 U.S. 1, 13 (2002). Under this standard, we must determine "whether the record contains evidence that could rationally lead to a contrary finding with regard to the omitted element." Id. at 19.

The record before us could not lead to a conclusion contrary to the district court's finding that the vessel was subject to the jurisdiction of the United States. Indeed, Gil conceded that he "did not make a factual argument in opposition to the government's presentation" on jurisdiction over the vessel. This omission alone suggests that the asserted error was harmless. See id. (finding error in failing to submit element of an offense to jury harmless where "defendant did not, and apparently could not, bring forth facts contesting the omitted element").

Furthermore, the record establishes beyond a reasonable doubt that jurisdiction over the vessel existed under § 70502(c)(1)(F)(iii), which in relevant part, extends jurisdiction over "a vessel located in the contiguous zone of the United States . . . that . . . is a hovering vessel," as both of those concepts are above defined. The vessel was indisputably "located within the contiguous zone of the United States," i.e., less than twenty-four nautical miles from the shores of Puerto Rico, when it was interdicted. Although Gil argues (without citation to authority and contrary to logic) that the position of the boat when spotted,

-6-

rather than interdicted, determines its position for purposes of § 70502(c)(1)(F), he does not (nor can he) contest that, when seized, the vessel was within the contiguous zone.

Moreover, the vessel was clearly a "hovering vessel" as defined by 19 U.S.C. § 1401(K): as explained above, the vessel was located in an area known as "a common entrance point for contraband," was traveling without lights at night, and was dead in the water until the USCG approached -- at which point the vessel attempted to evade capture while its occupants jettisoned bales of cocaine.  Again, Gil does not identify any evidence to the contrary.  We must conclude beyond a reasonable doubt, then, that the jury would have found Gil guilty even if the question of jurisdiction over Gil's vessel had been submitted to them, rendering any error in failing to do so harmless.  See Neder, 527 U.S. at 19.

**Affirmed**.