Dissent by Judge Kozinski OPINION REINHARDT, Circuit Judge: Abraham Villalba Saldivar (“Saldivar”), a native and citizen of Mexico, petitions for review of a decision by the Board of Immigration Appeals (“BIA”). In an unpublished, single-member decision, the BIA held that he was statutorily ineligible for cancellation of removal because he could not establish seven years of continuous residence in the United States after having been “admitted in any status.” 8 U.S.C. § 1229b(a)(2). Saldivar was “admitted” in 1993 when he was waved across the border after inspection by an immigration officer. Therefore, we must address only whether this “admission” was “in any status.” Because the phrase “in any status” plainly encompasses every status recognized by immigration statutes, lawful or unlawful, we hold that Saldivar’s procedurally regular admission in 1993 was an admission in any status under § 1229b(a)(2) and grant his petition for review. FACTUAL AND PROCEDURAL BACKGROUND Saldivar entered the United States in 1993 as a ten-year-old child when he was “waved through inspection” by an officer at the port of entry in San Ysidro, California. In 2001, Saldivar married Desiree Lu-zano, a United States citizen. The couple has three children, who are also U.S. citizens. On October 11, 2006, Saldivar adjusted his status to lawful permanent resident (“LPR”). About six years later, on September 25 and 26, 2012, he was convicted in California Superior Court of possession of methamphetamine and possession of paraphernalia used for smoking a controlled substance. On November 1, 2012, the U.S. Department of Homeland Security served Saldi-var with a Notice to Appear, alleging that he was removable pursuant to 8 U.S.C. § 1227(a)(2)(B)(i) as a noncitizen convicted of a controlled substance violation. At Sal-divar’s hearing, the Immigration Judge (“IJ”) found that the charge in the Notice to Appear was proven by clear and convincing evidence, rendering him removable. Saldivar applied for cancellation of removal pursuant to 8 U.S.C. § 1229b(a). Before conducting a hearing on the application for cancellation of removal, the IJ ordered the parties to submit briefs addressing whether Saldivar was statutorily eligible for that form of relief. Based on the written submissions, and without taking any evidence or testimony as to whether Saldivar was in fact “waved through the border” in 1993, the IJ determined that he was ineligible for cancellation of. .removal as a matter of law. He reasoned that, even if Saldivar had been waved through in 1993, he still could not establish the requisite seven years of continuous residence in the United States after being “admitted in any status” under § 1229b(a)(2). According to the IJ, Saldivar’s “procedurally correct inspection and admission” in 1993 could not be considered an admission “in any status” because “mistaken admissions do not confer a status, either permanent or otherwise.” Nor could Saldivar rely on his LPR status to satisfy the seven-year continuous residency requirement: his controlled substance violation cut off his .period of continuous residence approximately six years after he adjusted his status to LPR. . The BIA affirmed the IJ’s decision. It rejected Saldivar’s argument that he was “admitted in any status” in 1993 when he was waved across the border. Relying on In re Blancas-Lara, 23 I. & N. Dec. 458, 460 (BIA 2002), the BIA concluded that an “admission with procedural regularity,” such as being waved through the border by an immigration officer, “is not tantamount to admission ‘in any status,’ either immigrant or nonimmigrant.” Therefore, it held, Saldivar could not establish continuous residence for seven .years after being admitted in any status and was not eligible for cancellation of removal. Saldivar timely petitioned for review. STANDARD OF REVIEW “Because the BIA wrote its own decision and did not adopt'the IJ’s decision, we, review the BIA decision only, not the IJ’s decision.” Aden v. Holder, 589 F.3d 1040, 1043 (9th Cir. 2009). We review de novo the BIA’s determination of legal questions. Vitug v. Holder, 723 F.3d 1056, 1062 (9th Cir. 2013). ANALYSIS In order to establish eligibility for cancellation of removal, Saldivar, must demonstrate that he: “(1) has been an alien lawfully admitted for permanent residence for not less than five years, (2) has resided in the United States continuously for seven years after having been admitted in any status, and (3) has not been convicted of any aggravated , felony.” 8 U.S.C. § 1229b(a). The parties do not dispute that Saldivar satisfies the first and third requirements. The only dispute is whether Saldivar was “admitted in any status” when he entered' the United States in 1993. A. Saldivar was “admitted” in 1993 when he was waved through the border. For purposes of this appeal, we assume that Saldivar entered the United States in 1993 and that he was “waved through” the port of entry by an immigration officer.[1] We reaffirm that an alien is “admitted” when he presents himself for inspection and is waved through a port of entry, in accordance with our precedent and the BIA’s longstanding interpretation of “admission.” See Hing Sum v. Holder, 602 F.3d 1092, 1100-01 & n.7 (9th Cir. 2010); In re Areguillin, 17 I. & N. Dec. 308, 309-310 (BIA 1980) (concluding that respondent was “admitted” when “an immigration officer at the port of entry looked inside the car, asked the driver a question, then permitted the car and its occupants [including respondent] to proceed into the United States”). In Areguillin, the BIA explained that “ ‘[a]dmission’ occurs when the inspecting officer communicates to the applicant that he has determined that the applicant is not inadmissible ... [by] permitting] the applicant to pass through the port of entry.” Id, at 310 n.6. As we have explained previously, the BIA has consistently “defined ‘admission’ in procedural terms.” Hing Sum, 602 F.3d at 1100 & n.7 (9th Cir. 2010). When Congress adopted the Illegal Immigration Reform and Immigrant Responsibility Act (“IIRIRA”) amendments to the Immigration and Nationality Act (“INA”) in 1996, it “expressly incorporate[d] this procedural definition” of “admission” at 8 U.S.C. § 1101(a)(13)(A). Id.[2] As both parties agree, a procedurally regular admission requires only “an inspection and authorization by an immigration officer.” Id. Thus Saldivar was “admitted” when he- was waved through the border in 1993. B. Saldivar was admitted “in any status” in 1993. Because Saldivar was undisputedly “admitted” in 1993, we must decide whether that admission was “in any status.” We conclude that it was. The government erroneously contends that we should defer to the ■ BIA’s construction of 8 U.S.C. § 1229b(a)(2) undér Chevron, U.S.A., Inc. v. Natural Resources Defense Council, Inc., 467 U.S. 837, 8.44, 104 S.Ct. 2778, 81 L.Ed.2d 694 (1984). Chevron requires us to accept the BIA’s reasonable constructions of statutory terms in the INA, but' only if those terms are ambiguous. See Henriqueis-Ri-vas v. Holder, 707 F.3d 1081, 1087 (9th Cir. 2013) (en banc). Here, because the text of the INA “unambiguously bars” the BIA’s interpretation, “that is the end of the analysis,” and we must remand so that the Board may apply § ,1229b(a)(2) in light of our holding.[3] See Valenzuela Gallardo v. Lynch, 818 F.3d 808, 815 (9th Cir. 2016); see also Mellouli v. Lynch, — U.S.-, 135 S.Ct. 1980,1989, 192 L.Ed.2d 60 (2015) (explaining that where the BIA’s interpretation “makes scant sense,” it “is owed no deference under” Chevron doctrine). Only the Fifth Circuit has previously considered the precise issue before us, and that court held unequivocally that the statute is unambiguous. We agree with our fellow circuit and its reasoning. Accordingly) we join the Fifth Circuit in concluding that the “plain meaning of the phrase ‘any status’ ” unambiguously includes “all states or conditions, of whatever kind, that an alien may possess under the immigration laws,” including any lawful or unlawful status. Tula Rubio, 787 F.3d at 293, 294 n.5. “Although the word ‘status’ is not defined in the INA, its general meaning is ‘[a] person’s legal condition.’” Id. at 293 (quoting Black’s Law Dictionary 1542 (10th ed. 2014)); see also In re Blancas-Lara, 23 I. & N. Dec. at 460 (“ ‘Status’ is a term of art, which is used in the [INA] in a manner consistent with the common legal definition,” i.e. “a ‘[standing; state or condition,’ and as ‘[t]he legal relation of [an] individual to [the] rest of the community.’ ” (alterations in original) (quoting Black’s Law Dictionary 1264 (5th ed. 1979))).[4] In § 1229b(a)(2), “status” is modified by the word “any,” which, when “[r]ead naturally, ... has an expansive meaning, that is, ‘one or some indiscriminately of whatever kind.’ ” Ali v. Fed. Bureau of Prisons, 552 U.S. 214, 219, 128 S.Ct. 831, 169 L.Ed.2d 680 (2008) (quoting United States v. Gonzales, 520 U.S. 1, 5, 117 S.Ct. 1032, 137 L.Ed.2d 132 (1997)); see also Do Sung Uhm v. Humana, Inc., 620 F.3d 1134, 1153 (9th Cir. 2010) (“The word ‘an/ is generally used in the sense of ‘all’ or ‘ever/ and its meaning is most comprehensive.” (quoting Fleck v. KDI Sylvan Pools Inc., 981 F.2d 107, 115 (3d Cir.1992))). Because Congress “did not add any language limiting the breadth of [the] word ‘any' ” to § 1229b(a)(2), we must read the phrase “in any status” as “referring to all” states or conditions that an alien may possess under the INA, including both lawful and unlawful status. See Gonzales, 520 U.S. at 5, 117 S.Ct. 1032 (emphasis added); Tula-Rubio, 787 F.3d at 293. Indeed, the INA repeatedly refers to both “unlawful” or “lawful” status, meaning that the phrase “in any status” elsewhere in the Act must encompass unlawful status. See, e.g., 8 U.S.C. § 1644 (“Notwithstanding any other provision of Federal, State, or local law, no State or local government entity may be prohibited, or in any way restricted, from sending to or receiving from the Immigration and Naturalization Service information regarding the immigration status, laivful or unlawful, of an alien in the United States.” (emphasis added)); 8 U.S.C. § 1255a(a)(2)(A), (B) (requiring certain noncitizens to establish continuous residence in an “unlawful status” for adjustment purposes); 8 U.S.C. § 1365(b) (referencing “unlawful status”); see also Tula-Rubio, 787 F.3d at 295 & n.6 (citing provisions in the INA that refer to “lawful status,” and noting that such provisions would be superfluous if “status” is equivalent to “lawful status”). The fact that other provisions of the INA use the word “status” to refer to unlawful immigration status confirms that the phrase “any status” must be read to encompass unlawful, as well as lawful, status. See Sorenson v. Sec’y of Treasury of U.S., 475 U.S. 851, 860, 106 S.Ct. 1600, 89 L.Ed.2d 855 (1986) (“The normal rule of statutory construction assumes that ‘identical words used in different parts of the same act are intended to have the same meaning.’ ”) (quoting Helvering v. Stockholms Enskilda Bank, 293 U.S. 84, 87, 55 S.Ct. 50, 79 L.Ed. 211 (1934)); Tula-Rubio, 787 F.3d at 295.[5] The government’s argument that “in any status” means “in any lawful status” is facially incorrect. First, the word “lawful” is conspicuously absent from the broadly inclusive phrase “in any status” in § 1229b(a)(2). One need look no further than § 1229b(a)(1), the immediately preceding provision, to confirm that Congress understands the necessity of using the word “lawful” or “lawfully” when it intends to be restrictive. See 8 U.S.C. § 1229b(a)(1) (requiring that an alien “has been an alien lawfully admitted for permanent residence for not less than 5 years” to be eligible for cancellation of removal) (emphasis added).[6] Second, the government argues that unless we read “in any status” to mean “in any lawful status,” we will render the phrase “in any status” surplusage. Again, the immediately antecedent provision, § 1229b(a)(1),. reveals the government’s error, The phrase “in, any status” is not surplusage: instead, it serves to distinguish § 1229b(a)(2) from § 1229b(a)(1), which requires that an alien seeking cancellation of removal be “lawfully admitted for. permanent residence for not less than 5 years.” As the Fifth Circuit has rightly observed, “this structure very clearly indicates that Congress intended to establish two distinct duration requirements—one that demands a period following admission in any status and one that demands a [shorter] period of residency after admission” to LPR status. Tula-Rubio, 787 F.3d at 296. Unlike the narrower preceding . provision in § 1229b(a)(l), which requires lawful admission to LPR status for at least five years, Congress chose fo apply § 1229b(a)(2)’s seven-year continuous residency requirement to admission in any status, lawful or unlawful.[7] The structure of § 1229b thus confirms what was already unambiguously clear from the plain meaning of the text: the statute requires continuous presence for seven years after a procedurally lawful admission in any immigration status, lawful or unlawful.[8] Perhaps, had Congress required admission “in any status whatsoever” in § 1229b(a)(2), the government might have acknowledged that unlawful status was covered by the phrase it now finds ambiguous. However, as we have explained, the term “any,” in its plain meaning, is all-inclusive and any further language would be pure surplusage. In short, any is any, and a status is a status, be it lawful or unlawful. CONCLUSION Under the facts as we assume them to be, Saldivar was admitted to the United States in 1993, albeit in an unlawful status. Because he established continuous residence in the’United States for more than seven years after this admission, the BIA erred as a matter of law in concluding that Saldivar was statutorily ineligible for cancellation of removal. Saldivar’s petition for review is GRANTED, and we VACATE and REMAND for further proceedings consistent with this opinion. . Saldivar has consistently maintained that he was waved across the border in 1993, but as the government points out, "the representations made regarding this alleged entry were solely set forth by counsel” and are not clearly established by the record. That is because, before conducting an evidentiary hearing, the IJ decided that Saldivar was statutorily ineligible for cancellation of removal, even if he was waved across the border in 1993. The BIA agreed, concluding that such an entry, if it occurred, did not satisfy admission "in any status” as a matter of law. Accordingly, no evidentiary hearing was ever held. . After IIRIRA, "admitted” and "admission” were statutorily defined to mean “with respect to an alien, the lawful entry of the alien into the United States after inspection and authorization by an immigration officer.” 8 U.S.C. § 1101(a)(13)(A), We have explained that “the plain meaning of the term 'admission' in § 1101(a)(13)(A) .., refers to a procedurally regular admission and not a substantively lawful admission.” Hing Sum, 602 F.3d at 1096; see also In re Quilantan, 25 I. & N. Dec. 285, 290 (BIA 2010) (reconfirming that procedurally regular admission constitutes an "admission” as defined by § 1101(a)(13)(A)), Therefore, although the IIRIRA did not exist in 1993 when Saldivar entered the United States, the IIRIRA essentially codified the definition of "admission” in Areguillin, which has consistently governed since 1980. Regardless of whether an alien entered the United States before or after IIRIRA, procedural lawfulness, meaning inspection and admission by an immigration officer, "and not substantive lawfulness], is determinative of an ‘admission’ into' the United States.” Hing Sum, 602 F.3d at 1101. . The government maintains that the statute is ambiguous and therefore we should , defer to the BIA’s reasonable interpretation. Although we normally do not accord Chevron deference to an unpublished decision issued by a single -board member, the government asserts that Chevron deference is appropriate in this case because the BIA’s decision was based on its previously published and precedential decision, In re Blancas-Lara, 23 I. & N. Dec. 458 (BIA 2002). .Even if § 1229b(a)(2) were ambiguous— and it is not—the BIA’s decision in this case would not be entitled to Chevron deference based on its citation to Blancas-Laral An unpublished decision of a. single board member is. entitled to Chevron deference, based .on its citation to a previous decision only if "the precise issue of statutory interpretation had been answered by the BIA in a published decision that carried the force of law." Garcia-Quintero v. Gonzales, 455 F.3d 1006, 1014 (9th Cir. 2006), abrogated on other grounds by Medina-Nunez v. Lynch, 788 F.3d 1103, 1104-05 (9th Cir. 2015). Blancas-Lara, however, "does not directly govern the situation presented here because it dealt with an alien who was 'admitted to the United States as the holder of a border crossing card’ and clearly had the status of a nonimmigrant.” Tula-Rubio v. Lynch, 787 F.3d 288, 294 n.4 (5th Cir. 2015). It did not address the situation before us now, in which an alien was lawfully admitted in an unlawful status. It merely held that the use of "any” in § 1229b(a)(2) signified that Congress “intended ... to include” and did include “admissions of nonimmigrants” in that provision. 23 I. & N. Dec. at 459-60. In fact, it is important to note that the BIA’s broad definition of "status” in Blancas-Lara is actually wholly consistent with our interpretation of the statute’s unambiguous language.' See id.; infra n.6. At the very most, the BIA’s unpublished decision in this case is entitled to Skidmore deference, under which we must consider "the validity of the BIA’s reasoning, its thoroughness, and overall persuasiveness.” Garcia-Quintero, 455 F.3d at 1015. For the reasons given in this opinion, including the BIA’s misinterpretation of Blancas-Lara itself, see Henriquez-Rivas, 707 F.3d at 1083 (granting petition for review where BIA "misapplied its own precedent”), we do not find the BIA’s interpretation of § 1229b(a)(2) to be persuasive or based on valid reasoning. Therefore, even if the statute were ambiguous, the BIA’s interpretation could not govern, regardless of which level of deference it is due. . Unlawful status is clearly a “state or condition” and a descriptor of an individual’s "legal relation ... to the rest of the community” and thus within the BIA’s definition of "status” in Blancas-Lara. 23 I. & N. Dec. at 460 (quoting Black’s Law Dictionary 1264 (5th ed. 1979)). Contrary to the dissent’s contention, Blancas-Lara s further explanation of status as denoting "someone who possesses a certain legal standing, e.g. classification as an immigrant or nonimmigrant,” does not limit the universe of potential "state[s] or condition[s]” for purposes of immigration law to solely those two conditions. See id. "E.g.” is not, incidentally, synonymous with “i.e.” . The INA’s description of a form of relief as "adjustment of status” also compels a broad reading of "in any status.” The relief is available to some individuals who have lawful status and to some who have unlawful status. 8 U.S.C. § 1229b(b); § 1255; § 1255a. "Adjustment of status" presupposes, by its chosen language, that those lacking lawful status possess a status that is then “adjust[ed] to” a different one. See, e.g., § 1229b(b) (permitting the Attorney General to "adjust to the status of an alien lawfully admitted for permanent residence,” with no requirement of prior lawful status); 8 U.S.C. § 1255(c)(2) (providing for certain instances in which those "in unlawful immigration status” at the time of filing an application for adjustment may nevertheless adjust). . The language of § 1229b(a)(l) also reveals the flaw in the government’s argument that an "inadvertent admission” cannot "accord [an alien] any status” under our decision in Lai Haw Wong v. INS, 474 F.2d 739 (9th Cir. 1973). In that case, we affirmed the BIA's decision that the "admission [of Wong and her sons] on visas to which they were not entitled conferred no lawful status ... and' that they could not rely on each other’s admission to gain section 241(f) status.” Id. at 741. Wong, however, evaluated the family's eligibility for relief from removal under (what was then) INA § 241(f), 8 U.S.C. § 1251(f), under which-"an alien otherwise admissible at the time of entry who is the spouse, parent, or a .child of a United States citizen or of an alien lawfully admitted for permanent residence” was not deportable; Id. at 741 n.2 (emphasis added). Section 241(f) makes no reference to "status.” In context, our statement that the "mistaken admission conferred no status, permanent resident or otherwise,” pertained only to their lack of lawful status, i.e. permanent resident or otherwise, e.g. § 241(f) status, § 1101(a)(15)(B) temporary visitor status, or § 1101(a)(15)(D) alien crewman status. See id. at 742; see generally 8 U.S.C. § 1101(a)(15) (1970) (listing various "classes of nonimmigrant aliens”). The opinion did not purport, to delineate the meaning of "status” in the INA. Its single, passing reference to "no status,” in determining whether any family member’s admission qualified another for § 241(f). status, is simply inapposite in interpreting § 1229b(a)(2). ”[T]he language of an opinion is not always to be parsed as though we were dealing with language, of a statute.” Reiter v. Sonotone Corp., 442 U.S, 330, 341, 99 S.Ct. 2326, 60 L.Ed.2d 931 (1979). Since 1973, no court has. ever relied on Lai Haw Wong to construe the meaning of “status” in the INA, much less to construe unlawful status as not "any status.".Rather, we have described the case in accordance with our understanding here, as "approv[ing] the BIA’s ruling that’’ the Wongs’ admission "conferred no lawful status on the aliens for-purposes of obtaining relief from deportation.” Monet v. INS, 79-1 E.2d 752, 753 (9th Cir. 1986) (emphasis added);, see also Kyong Ho Shin v. Holder, 607 F.3d 1213, 1217 (9th Cir. 2010) (citing Lai Haw Wong to support the proposition that a noncitizen "was never lawfully admitted for permanent residence,” making derivative visa grants improper (internal quotation marks omitted)). . The government^ reliance on our prior precedents interpreting § 1229b(a)(2) is misplaced. Citing Vasquez de Alcantar v. Holder, 645 F.3d 1097, 1102-03 (9th Cir. 2011), it contends that we have previously concluded that LPRs, like Saldivar, do not begin to accrue continuous residence under § 1229b(a)(2) until they adjust to LPR status. The government, however, overlooks a key distinction between Vasquez and the present case; unlike Saldivar, who was unquestionably “admitted” in 1993, the petitioner in Vasquez entered without inspection and was never otherwise admitted. See id, at 1098. We concluded in Vasquez that an alien who was never otherwise admitted could not be considered “admitted in any status” when his 1-130 visa petition was approved. See id.; see also Garcia-Quintero, 455 F.3d at 1018-19 (concluding acceptance into the Family Unity Program constitutes admission in any status); Guevara v. Holder, 649 F.3d 1086, 1091-92 (9th Cir. 2011) (holding employment authorization does not constitute admission in any status); see also Tula-Rubio, 787 F.3d at 291 & n.1 (noting that Vasquez, Garcia-Quintero, and Guevara do not resolve the applicability of § 1229b(a)(2) to "wave through entry”). None of these cases supports the government’s proposition that an alien who- was unquestionably "admitted” was not admitted "in any status,” If anything," this line of precedent supports Saldivar’s argument, because it interprets "admitted in any status” as being broader than simply "admitted" and as allowing noncitizens who do not go through regular inspection and authorization to qualify. See Vasquez de Alcantar, (645 F.3d at 1101 (“[T]he clause ‘in any status’ has been interpreted to create alternative methods for aliens, who do not enter after inspection and authorization, to meet the ‘admitted in any status’ requirement of § 1229b(a)(2).” (emphasis added)). . Because we conclude that Saldivar’s procedurally regular admission constituted an admission “in any status” as a matter of law, we need not reach his argument that he should have been presumed to have been admitted in immigrant status pursuant to 8 U.S.C. § 1184(b),