NOT FOR PUBLICATION

**FILED**

UNITED STATES COURT OF APPEALS

FOR THE NINTH CIRCUIT

MAY 18 2022

MOLLY C. DWYER, CLERK
U.S. COURT OF APPEALS

CHRISTOPHER NDIAGU,

Petitioner,

v.

MERRICK B. GARLAND, Attorney General,

Respondent.

No.   19-72504

Agency No. A093-456-688

MEMORANDUM[*]

On Petition for Review of an Order of the
Board of Immigration Appeals

Argued and Submitted March 9, 2022
Pasadena, California

Before:  BERZON, TALLMAN, and FRIEDLAND, Circuit Judges.
Partial Concurrence and Partial Dissent by Judge TALLMAN.

Christopher Ndiagu ("Petitioner"), a native of Nigeria, petitions for review

of a decision of the Board of Immigration Appeals ("BIA") upholding the

immigration judge's ("IJ") denial of his claims for asylum, withholding of

removal, and relief under the Convention Against Torture ("CAT").  We have

jurisdiction under 8 U.S.C. § 1252.  We grant the petition in part, deny it in part,

---

[*]    This disposition is not appropriate for publication and is not precedent
except as provided by Ninth Circuit Rule 36-3.

and remand for proceedings consistent with this disposition.

1. Substantial evidence supports the BIA's decision to sustain the removability charge in the Notice to Appear, which alleged that Petitioner is "[a]n alien present in the United States without being admitted or paroled," 8 U.S.C. § 1182(a)(6)(A)(i). Petitioner alleged that he was waved through a port of entry upon return from a road trip to Canada in 1986, when he was ten years old. *See Saldivar v. Sessions*, 877 F.3d 812, 814-815 (9th Cir. 2017) (noting that a wave-through is a procedurally lawful admission). The BIA upheld the IJ's determination that Petitioner's evidence was unpersuasive because it included factual inconsistencies and provided insufficient detail about or corroborating evidence of the trip.

The record does not compel a contrary conclusion. Petitioner's evidence inconsistently described the length of the trip to Canada and the number of cousins who accompanied him. The IJ was entitled to rely on these inconsistencies as a reason to discount the evidence. The IJ also reasonably concluded that the barebones allegations in the declarations detracted from the plausibility of Petitioner's story, especially without other evidence of the wedding itself.

In the alternative, Petitioner argues that the IJ violated his due process rights by scheduling a removability hearing on a date when his cousin—who might have testified about the wave-through admission—could not attend. We disagree.

Although Petitioner explained that his cousin would likely be traveling abroad on the hearing date and repeatedly asked for an earlier hearing, the IJ responded that no earlier date was available. Petitioner did not say when his cousin would return, and he never suggested that a later date would work. Under the circumstances, the IJ's failure to accommodate the cousin's travel schedule did not violate due process. To be sure, an IJ's failure to permit testimony at all can violate due process. *See, e.g.*, *Zolotukhin v. Gonzales*, 417 F.3d 1073, 1075-76 (9th Cir. 2005). But here, Petitioner had an adequate opportunity to present witness testimony and documentary evidence rebutting the removability charge.

2. We agree with Petitioner that the BIA erred in upholding the IJ's determination that Petitioner failed to credibly establish his membership in the Osu caste in Nigeria, the social group on which he based his claims for relief. The IJ entirely failed to consider significant evidence that supported Petitioner's claim, and his merits hearing was marred by a regulatory violation that may have affected the outcome of his proceedings. Accordingly, we remand this case to the BIA with instructions to grant Petitioner a new merits hearing on an open record.

The IJ based its adverse credibility determination on two considerations: that Petitioner could not articulate the identifying characteristics of the Osu caste and

3

that he was convicted of a crime involving fraudulent conduct.[1]  The IJ also
discounted official documents from Nigeria showing that Petitioner's mother was
murdered by a mob on account of her Osu identity, specifically because she
violated a taboo by marrying a non-Osu.  Those documents included a police
report describing his mother's murder, a copy of her death certificate, a medical
report describing the cause of death, and a letter from a witness to his mother's
murder.  The IJ mischaracterized this evidence, erroneously stating that the
documents "do[] not attribute any cause or basis for [his mother's] death."[2]  The
BIA then further erred, stating that the IJ "did not conclude that [Petitioner's]
documents were fraudulent," while failing to explain how the documents could be
non-fraudulent and yet not corroborate the fundamental basis of Petitioner's claim.

---

[1] We conclude that the documents establishing Petitioner's convictions were properly authenticated and admitted under 8 U.S.C. § 1229a(c)(3)(B) and 8 C.F.R. § 1003.41.  *See Matter of J.R. Velazquez*, 25 I. & N. Dec. 680, 684 (BIA 2012).  In two pro se motions filed before the appointment of his pro bono counsel (ECF Dkt. Nos. 13 & 27), Petitioner asked this court to take judicial notice of his objections to the admission of his conviction records.  Petitioner's objections are in the administrative record, so we deny both motions for judicial notice as unnecessary.

[2] At the merits hearing, the IJ expressed confusion about whether the Osu, a caste defined by family lineage, could be considered a cognizable social group without observable, phenotypic characteristics, like skin color, that would allow someone to identify an Osu by sight.  The IJ and BIA ultimately made an adverse credibility determination without discussing whether the Osu are a cognizable social group.  But to the extent that the IJ initially did doubt that the Osu existed as a caste in Nigeria, that reaction stemmed from a failure to consider the country conditions evidence, which described "the Osu caste system" as "an indigenous religious belief system," according to which Osus are considered "outcasts" and "subjected to outrageous forms of inhuman abuse and discrimination."

4

The failure of the BIA to grapple with this significant documentary evidence or to offer a reasonable explanation for discounting it constitutes procedural error. *Cf. Castillo v. Barr*, 980 F.3d 1278, 1283 (9th Cir. 2020) ("Where the Board does not consider all the evidence before it, either by 'misstating the record [or] failing to mention highly probative or potentially dispositive evidence,' its decision cannot stand." (alteration in original) (quoting *Cole v. Holder*, 659 F.3d 762, 772 (9th Cir. 2011)).

In addition, Petitioner's merits hearing was marred by a due process violation. The BIA did not dispute, and the Government concedes, that the IJ violated agency regulations by approving a venue change from Lancaster, where Petitioner's family was supposed to testify, to Los Angeles. The IJ did so ex parte, without any notice to Petitioner and without giving him an opportunity to object. This violation of a statutorily prescribed procedural protection violates due process if the violation caused prejudice to the petitioner, meaning that the violation "potentially [affected] the outcome of the proceedings." *Colmenar v. INS*, 210 F.3d 967, 972 (9th Cir. 2000) (alteration in original); *Agyeman v. INS*, 296 F.3d 871, 877 (9th Cir. 2002).

Here, Petitioner's family could have helped him credibly establish his identity and his membership in the Osu caste. *See Zolotukhin*, 417 F.3d at 1075-76 (holding that the IJ violated due process by refusing to permit testimony from the

5

petitioner's grandmother, who could have corroborated his claim that he is a Pentecostal Christian). The Government argues that Petitioner cannot establish prejudice without specifying what his family would have said, but this argument lacks support in the caselaw. *See id.* at 1077 (noting that the court "may infer prejudice even absent any allegations as to what the petitioner or his witnesses might have said if the IJ had not . . . refused to permit their testimony").

3. The BIA did not err in holding that Petitioner's derivative claims, based on persecution that his U.S.-citizen stepdaughter and wife may suffer in Nigeria, are not cognizable as a matter of law. The BIA relied on its decision in *Matter of A-K-*, 24 I. & N. Dec. 275 (BIA 2007), holding that there is no statutory basis for a derivative claim based on harm to an asylum applicant's U.S.-citizen relative.

Petitioner argues that his derivative claims are valid under *Abebe v. Gonzales*, 432 F.3d 1037 (9th Cir. 2005) (en banc), and *Benyamin v. Holder*, 579 F.3d 970 (9th Cir. 2009). But *Abebe* expressly declined to decide "whether Petitioners, parents of a U.S. citizen child likely to face persecution in her parents' native country, may derivatively qualify for asylum" because "[t]hat was not a ground relied upon or even discussed by the IJ or the BIA in this case." *Id.* at 1043. *Benyamin* is also inapposite. That case involved a non-citizen child, and it expressly distinguished cases involving U.S.-citizen children. *Benyamin*, 579 F.3d at 975. Moreover, the child in *Benyamin* was a minor who faced "constructive

6

deportation"—*i.e.*, the deportation of the non-citizen parents would necessarily have resulted in the deportation of the minor child. *Id.* at 974-75. Here, by contrast, the family members Petitioner points to in making this argument are U.S. citizens and are both adults, so they face no prospect of constructive deportation to Nigeria if he is removed. We conclude that the BIA properly rejected the derivative claims.

**PETITION GRANTED in part, DENIED in part, and REMANDED.**

19-72504, *Ndiagu v. Garland*

TALLMAN, Circuit Judge, concurring in part and dissenting in part:

I concur in the disposition with the exception of its conclusion that the BIA erred in upholding the IJ's determination that Petitioner failed to credibly establish his identity. "For us to grant the petition for review on due process grounds, Petitioner must show prejudice, which means that the outcome of the proceeding *may have been affected* by the alleged violation." *Zolotukhin v. Gonzales*, 417 F.3d 1073, 1076 (9th Cir. 2005) (quotations and citation omitted). There is no such cognizable prejudice where the excluded witnesses, Ndiagu's family, had never lived in the relevant countries and could only offer a hearsay recount of Ndiagu's proffered history, which the IJ discredited. Finding no deprivation of due process, I would conclude that substantial evidence supports the agency's conclusion. *See Duran-Rodriguez v. Barr*, 918 F.3d 1025, 1028 (9th Cir. 2019).

1